JASON P. SACCUZZO (Bar No. 221837)
(jsaccuzzo@vivolilaw.com)
VIVOLI SACCUZZO, LLP
3104 Fourth Avenue
San Diego, California 92103
(619) 744-9992 (Tel)
(619) 744-9994 (Fax)

Attorneys for Plaintiff,
SESTINA CULVER CITY LLC

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:25-bk-13679-WB |
| | Chapter: 7 |
| MATTHEW ROBERT BRONFELD, | |
| | Adv. No. 2:25-ap-01333-WB |
| Debtor. | |
| _____ | **FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(2)(B), (4), and (6)** |
| SESTINA CULVER CITY LLC, a California limited liability company, | |
| Plaintiff, | |
| vs. | |
| MATTHEW ROBERT BRONFELD, an individual, | |
| Defendant. | |
| _____ | |

FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY
2:25-ap-01333-WB

Plaintiff SESTINA CULVER CITY LLC alleges as follows:

1.     This action arises from the calculated and far-reaching fraud orchestrated by Defendant Matthew Robert Bronfeld who systematically executed a series of fraudulent loans in furtherance of an intricate financial scheme to misappropriate and embezzle substantial sums of money from Plaintiff Sestina Culver City, LLC.  This scheme involved falsifying financial records, gaining the trust and confidence of Sestina's principals, and then exploiting that trust for personal gain.  Bronfeld's actions ultimately drove Sestina into financial devastation, leaving the company in ruin.  His deliberate and deceitful conduct destroyed what began as a promising cutting-edge restaurant concept developed by the renowned celebrity vegan chef, Matthew Kenney. In an effort to avoid liability for his fraudulent and intentional acts and omissions, Bronfeld sought bankruptcy protection.  Plaintiff brings this action to object to any discharge that would relieve Bronfeld of responsibility for his fraudulent and intentional acts and omissions.

## **THE PARTIES**

2.     Plaintiff SESTINA CULVER CITY LLC ("Plaintiff" or "Sestina") is a California Limited Liability Company with its principal place of business in Culver City, California.  Sestina was conceived as a reimagined version of Wildcraft Sourdough Pizza, transitioning into a vibrant plant-based pasta restaurant under the leadership and vision of Christopher Stone and his partner, renowned celebrity vegan chef Matthew Kenney.  The restaurant quickly garnered public attention for its innovative concept but was later plunged into financial chaos due to Defendant Bronfeld's fraud and outright theft.

3.     Defendant MATTHEW ROBERT BRONFELD ("Defendant" or "Bronfeld") is an individual who, at all relevant times, served as the

FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY

2:25-ap-01333-WB

Chief Operating Officer ("COO") of New Food Management, Inc. ("NFM") a company engaged to serve as Sestina's manager pursuant to a "Management Services Agreement" dated October 1, 2020. Bronfeld was also the COO of MK Cuisine Global, LLC ("MKGC LLC"), which held a 20% membership interest in Sestina. By virtue of his role as COO of NFM, Bronfeld exercised control over Sestina's financial systems, including its bank accounts, accounting software, and tax filings, and was responsible for preparing and transmitting all financial reports to the company's principals. Sestina and its managing member, Stone, relied on Bronfeld to safeguard company assets, ensure compliance with tax and regulatory obligations, and provide honest and accurate information regarding the restaurant's financial condition. By virtue of his position, Bronfeld held a position of trust and confidence with Sestina, which he betrayed. As a result, Sestina initiated a civil action on October 4, 2024, in the Los Angeles County Superior Court, entitled *Sestina Culver City, LLC v. Matt Bronfeld*, Case No. 24SMCV04780 (the "State Court Action").

## JURISDICTION AND VENUE

4. On May 1, 2025 (the "Petition Date"), Bronfeld, then a resident of Los Angeles County, filed his voluntary petition under chapter 7 of the Bankruptcy Code, commencing this bankruptcy case (the "Bankruptcy Case"), in the Central District of California, Los Angeles Division. This case is numbered 2:25-bk-13679-WB. Therefore, this court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (B), (G), and (J).

////

FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY

2:25-ap-01333-WB

6.      Venue is proper pursuant to 28 U.S.C. § 1409(a) because this adversary proceeding arises under and in connection with a case under Title 11, which is pending in this District.

## FACTUAL BACKGROUND

### A.    The Genesis of Sestina.

7.      In 2012, Christopher Stone established Wildcraft Sourdough Pizza at 9725 Culver Blvd, Culver City, California.  Over the years, Wildcraft became a staple in the community, albeit with modest success.  Stone, alongside his partners, consistently invested in the restaurant, pouring in approximately $800,000 in enhancements over the years.  However, the unforeseen challenges brought on by the COVID-19 pandemic in early 2020 severely impacted the business.

8.      In September 2020, faced with the realities of a global pandemic and the need to adapt, Stone made the difficult decision to transition Wildcraft into a new concept.  Recognizing the growing demand for plant-based cuisine, Stone decided to team-up with Matthew Kenney, a globally recognized celebrity vegan chef with a vast portfolio of over 30 restaurants worldwide at the time.  Together, they envisioned Sestina, a modern, plant-based pasta restaurant that would set new standards in vegan dining and serve as the model for future restaurants.

9.      As part of the transition, Stone bought out his partners' shares for approximately $80,000, rebranded the business as Sestina Culver City LLC (formerly Lazzari LA, LLC).  Stone also invested an additional $200,000 in refurbishing the space.  Kenney, through his entities, was granted a 20% equity stake in Sestina, with the potential to increase to 50%.  Furthermore, Kenney's management firm, NFM, to handle the operational aspects of the restaurant.

/ / / /

FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY

2:25-ap-01333-WB

10. Defendant Bronfeld, who was the COO of NFM, was appointed as the primary point of contact for Sestina. Bronfeld was entrusted with the responsibility of managing Sestina's bank accounts, overseeing financial operations, and ensuring the smooth running of the restaurant. His duties included managing payroll, taxes, financial reporting, and maintaining compliance with all legal obligations.

11. Significantly, however, Bronfeld did not have the authority to enter into loans on behalf of Sestina without the explicit approval of Sestina's Board of Managers. According to the Amended and Restated Limited Liability Company Agreement of Sestina (the "Operating Agreement"), which governs Sestina, the authority to incur any debt or financial obligations on behalf of the company is strictly reserved for the Board. Specifically, the Agreement required that any incurrence of indebtedness, other than normal trade payables incurred in the ordinary course of business, must be approved by Sestina's Board. Additionally, the Operating Agreement mandated that any significant financial decision, including the acceptance of loans, required a supermajority vote of the Members or the explicit consent of the Board. Without such express authorization, any loans or financial commitments entered into by Bronfeld, who was not a member of Sestina or on its Board, were unauthorized and fraudulent.

12. For the first year, Sestina operated under challenging conditions due to the ongoing pandemic. Despite the hurdles, including state-mandated lockdowns, Sestina managed to stay afloat, largely due to temporary capital injections from Stone and from Kenney's company, MKGC LLC. However, by September 2022, something was seriously amiss.

/ / / /

FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY

2:25-ap-01333-WB

**B.    The Discovery of Financial Irregularities.**

13.    In September 2022, as Stone prepared to file his annual taxes, he realized that he had not received the K-1 form for Sestina.  Concerned, Stone reached out to Bronfeld, who informed him that the entire finance team had been dismissed and that a new outsourced CFO company was in the process of being brought on board.

14.    Bronfeld subsequently assured Stone stating that the delay in issuing Stone a K-1 form would soon be resolved.  However, weeks turned into months, and Stone's concerns deepened as the new CFO company failed to respond to his inquiries.  In December 2022, after repeatedly asking Bronfeld to provide Sestina's financials, Bronfeld provided Stone with documents he (Bronfeld) represented where Sestina's financial statements.    However, these documents appeared riddled with inaccuracies, including a reported 0% food cost for January 2023, an impossibility for a functioning restaurant.

15.    Afterwards, Stone demanded a direct conversation with Matthew Kenney about the financials.  During this conversation, Kenney claimed to be in the dark about Sestina's finances, and he simply deferred to Bronfeld.

16.    In late May 2023, Stone received a notice from the California Department of Tax and Fee Administration ("CDTFA") indicating that Sestina had failed to pay sales tax for the entirety of 2022, resulting in a tax liability of approximately $280,000.  This shocking revelation came on the heels of an IRS notice informing Stone that payroll taxes had also not been paid, including the taxes that should have been withheld from employee wages, a serious legal issue that placed Stone at risk of personal liability.

/ / / /

FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY

2:25-ap-01333-WB

17.    Stone confronted Kenney and Bronfeld about the financial discrepancies he had uncovered. Kenney responded with surprise, claiming he had no knowledge of the issues, including the revelation that the financial team overseeing Sestina's finances had been dismissed one year earlier, much earlier than Bronfeld had previously told Stone. This revelation raised serious concerns, making it clear that the situation at Sestina was not merely a matter of poor financial management.

### C.    The Unraveling of the Fraudulent Scheme.

18.    As Stone delved deeper into the company's financial records, a disturbing pattern of deceit began to emerge. In March 2023, Sestina's power was abruptly shut off due to an unpaid bill of over $30,000. Stone, determined to keep the restaurant operational, personally paid the outstanding amount to Southern California Edison ("SCE"). However, his efforts to stabilize the business were continually undermined by new revelations of financial misconduct.

19.    In May 2023, Stone discovered that Sestina had defaulted again on its sales tax payment plan.

20.    By July 2023, the situation had become untenable. Sestina's financial obligations, including rent and tax payments, were overwhelming, and the restaurant was forced to close its doors permanently.

21.    Thereafter, in December 2023, while in negotiations to potentially sell Sestina's liquor license, Stone learned of a new and even more alarming issue, a UCC lien from Blue Ridge Bank and Jaris Inc., related to loans totaling over $250,000 that had been taken out in Sestina's name without his knowledge or authorization.

////

////

FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY

22.   Stone's investigation revealed that these loans had been facilitated through Sestina's point-of-sale ("POS") system, SpotOn, which had a partnership with Jaris.  The loans were approved using a digital signature that Sestina is informed and believes, and based thereon alleges, was forged by Bronfeld.  The funds were then funneled into accounts controlled by MKGC LLC and other entities managed or controlled by Bronfeld.  At the time of this Complaint, the amount of money siphoned out of Sestina through these accounts remains unknown and will be the subject of discovery in this action.

23.   Bronfeld, as COO of NFM and MKGC LLC, had full access to Sestina's bank accounts and financial records, and he had the ability and means to enter into the foregoing point of sale loans.  Instead of professionally managing these accounts he exploited his position to siphon funds from Sestina, leaving Sestina with crippling debt and unpaid obligations.

24.   Stone also uncovered evidence that Bronfeld had facilitated the fraudulent redemption of InKind vouchers at Sestina.  InKind, a restaurant financing company, had provided substantial funds to MKGC LLC in exchange for food credits that could be redeemed at various restaurants, including Sestina. However, these vouchers were redeemed without compensating Sestina, effectively forcing Sestina to subsidize these meals while MKGC LLC benefitted from the proceeds, which Sestina is informed and believes, and based thereon alleges were then siphoned off by Bronfeld.

25.   The net result of the foregoing was that Stone and Kenney's vision of creating a successful plant-based restaurant was in ruins, destroyed by the greed and deceit of Bronfeld.

/ / / /

FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY

2:25-ap-01333-WB

**D.    The Aftermath.**

26.    In the months following the closure of Sestina, Stone has been left to grapple with the devastating consequences of Bronfeld's actions, including substantial tax liability of approximately $500,000, in addition to the substantial legal and accounting fees incurred in an attempt to salvage the business.

**E.    Bronfeld's History of Criminal Activity.**

27.    In the course of investigating this matter, Stone would later find out that Bronfeld had a history of criminal activity, including a conviction for grand theft in Florida.  On August 4, 2016, Bronfeld was sentenced in Interstate County, Florida, and was subsequently placed under the supervision of the Department of Corrections in West Palm Beach.  Bronfeld's prior conviction for a major financial crime mirrors the very scheme at issue here.  The conduct documented by the state department of corrections reflects the same pattern of deceit and manipulation that underlies his fraudulent acts against Sestina, demonstrating that his misconduct in this case is not an aberration but part of a recurring scheme of financial fraud.

28.    As a result of Debtor's conduct, Plaintiff initiated the State Court Action asserting claims including fraud, concealment, embezzlement, conversion, and civil theft.  The claims in the State Court Action arise from the same facts alleged herein and form the basis of the debt Plaintiff now seeks to have deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B), (4), and (6).  Since the debt arises from conduct constituting false pretenses, false representations, actual fraud, embezzlement, and willful and malicious injury, it is therefore nondischargeable under 11 U.S.C. § 523.

/ / / /

FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY

2:25-ap-01333-WB

# CLAIM I

## VIOLATION OF 11 U.S.C. § 523(a)(2)(B)

### (By Plaintiff Against Defendant Bronfeld)

29.   Plaintiff re-alleges and incorporates herein by this reference each of the allegations of paragraphs 1 through 28, above.

30.   This claim seeks a determination that the indebtedness owed by Defendant Bronfeld to Sestina is non-dischargeable under 11 U.S.C. § 523(a)(2)(B).

31.   At all relevant times, Bronfeld served as the COO of NFM, which was engaged to manage Sestina.  By virtue of that role, Bronfeld was in charge of Sestina's accounting, banking, and financial reporting. Sestina necessarily relied on Bronfeld to provide truthful information regarding the company's financial condition.

32.   Between approximately September 2022 and March 2023, Bronfeld prepared, signed, and transmitted a series of written financial statements purporting to reflect Sestina's financial condition.  While these initial reports appeared incomplete, Bronfeld repeatedly assured Stone in text messages and emails that Sestina's finances were sound, that all tax obligations were current, and that no irregularities existed in the company's accounts. After months of demanding further information, Bronfeld presented a new set of financials that appeared to be generated using professional software.  Each written report provided by Bronfeld represented that Sestina's books were accurate and that Sestina's operations remained financially stable.

33.   These written representations were materially false. Bronfeld knowingly fabricated the financial statements and related documents to conceal his own misconduct.  He falsely represented the legitimacy of financial transactions and the proper management of

FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY

2:25-ap-01333-WB

company funds.  At the same time, he intentionally withheld material information about the existence of unauthorized loans, the diversion and misappropriation of company money.  Bronfeld concealed these facts by presenting Stone with falsified written financial statements as alleged above.

34.    The falsity of these written statements was material to Sestina.  They distorted Sestina's balance sheet, omitted hundreds of thousands of dollars in unpaid tax obligations, and failed to disclose loans exceeding $250,000 that Defendant had fraudulently obtained in Sestina's name through its point-of-sale financing partner, Jaris Inc. and Blue Ridge Bank, using forged digital signatures.  By representing that Sestina's tax accounts were current and its cash flow positive, Bronfeld created a picture of fiscal stability that directly influenced Stone's decisions to continue funding operations, defer management changes, and rely on NFM's oversight.  Moreover, when Stone questioned some of the reports, Bronfeld provided Stone assurances that they were accurate and promised to provide further details.

35.    At the time he made and distributed these written statements, Bronfeld knew they were false.  Sestina is informed and believes, and based thereon alleges that Bronfeld was aware of that payroll and sales taxes remained unpaid for most of 2022.  He was also aware that he had forged or caused to be forged digital signatures to obtain financing without authorization and that substantial company funds had been transferred into accounts he controlled or that were connected to MKGC LLC.

36.    Bronfeld acted with the intent to deceive.  His purpose in falsifying financial records and concealing unauthorized loans was to perpetuate his access to Sestina's money, delay discovery of his theft of

FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY

2:25-ap-01333-WB

company assets, and maintain the confidence of Stone and other members of Sestina. By providing falsified reports and written assurances to Stone, he sought to reassure Sestina that its finances were secure and thereby prevent intervention that would have exposed his fraud and embezzlement.

37. Sestina in fact relied on these false written statements and assurances by Bronfeld in deciding how to manage the restaurant's finances and in determining whether to continue entrusting Bronfeld with control over company financial operations. Stone, acting for Sestina, relied on the written reports in good faith when deciding to advance funds for payroll and vendor expenses, to defer replacing NFM, and to forego independent audits. Given Bronfeld's role as COO and his apparent expertise, including his longtime relationship with Kenney and the multiple assurances Bronfeld provided Stone, such reliance was reasonable under the circumstances.

38. As a direct and proximate result of Bronfeld's materially false written statements and Sestina's reasonable reliance thereon, Sestina suffered significant financial losses. Sestina was left liable for approximately $500,000 in unpaid payroll and sales taxes, more than $250,000 in unauthorized debt arising from the forged point-of-sale loans, and over $150,000 in misappropriated funds. These losses ultimately forced Sestina to close its doors, destroying the business and its goodwill.

## CLAIM II

### 11 U.S.C. 523(a)(4)

### (By Plaintiff Against Defendant Bronfeld)

39. Plaintiff re-alleges and incorporates herein by this reference each of the allegations of paragraphs 1 through 38, above.

FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY

2:25-ap-01333-WB

40.    This cause of action is brought under 11 U.S.C. § 523(a)(4). For purposes of this claim, Sestina seeks a determination that the indebtedness owed by Bronfeld to Sestina is non-dischargeable because it arises from Bronfeld's embezzlement and larceny as defined under governing law.

41.    Defendant Bronfeld, in his capacity as COO of NFM, was entrusted with the management, custody, and control of the financial assets and property of Sestina.  In this role, Bronfeld obtained possession of Sestina's funds and property for the limited purpose of managing the company's operations, paying vendors, satisfying tax obligations, and maintaining accurate accounting records.  He had access to all of Sestina's bank accounts, point-of-sale systems, financial software, and records, and was obligated to use those assets solely for the benefit of Sestina and in accordance with its lawful business purposes.

42.    Instead, Bronfeld appropriated and converted Sestina's funds and property for his own personal use and benefit.  Without authorization or consent, he withdrew, transferred, and diverted company funds from Sestina's bank accounts into accounts under his personal control and into accounts belonging to or associated with his affiliates.  He also caused unauthorized loans to be issued in Sestina's name, forged or facilitated the forging of digital signatures to secure those loans, and then diverted the proceeds of those loans for personal use rather than for legitimate business purposes.

43.    At the time he appropriated these funds and assets, Bronfeld acted with the specific intent to permanently deprive Sestina of its rightful ownership and use of its property.  He knew that his conduct was unauthorized and that he was employing Sestina's assets for personal enrichment, in direct violation of his duties to the company, including

13

FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY

2:25-ap-01333-WB

California Penal Code 496 as alleged in the underlying action. These acts constitute embezzlement within the meaning of 11 U.S.C. § 523(a)(4), as defined in *In re Solario*, 611 B.R. 327, 342 (Bankr. C.D. Cal. 2020), and *In re Roberts*, 538 B.R. 1, 20 (Bankr. C.D. Cal. 2015).

44. In addition to his embezzlement, Bronfeld's conduct also constitutes larceny under § 523(a)(4). (See *In re Peltier*, 643 B.R. 349, 359-360 (9th Cir. BAP 2022) ["There is only one difference between embezzlement and larceny: for embezzlement, the perpetrator initially had the right to possess property and then stole it; while for larceny, the perpetrator stole property that the perpetrator never had a right to possess."].) To the extent Bronfeld obtained possession of Sestina's funds or property through the forging of loan documents or by creating and submitting false electronic authorizations, such property was unlawfully taken at the outset with the intent to convert it to his own use and without Sestina's knowledge or consent.

45. Sestina never consented to the withdrawals, transfers, or other misappropriations made by Bronfeld. At all times, Sestina and its principals expected and required that company funds be used only for legitimate business expenses and in furtherance of the restaurant's operations. Bronfeld's actions were executed with moral turpitude and intentional wrongdoing.

46. As a direct and proximate result of Bronfeld's embezzlement and larceny, Plaintiff has suffered extensive financial harm. These losses include the unauthorized diversion of company funds exceeding $150,000, the incurrence of approximately $250,000 in unauthorized loan obligations, unpaid tax liabilities exceeding $500,000, and the ultimate destruction of Sestina's business. The total damages sustained by Plaintiff are estimated to exceed $1,000,000, subject to proof at trial.

FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY

2:25-ap-01333-WB

# CLAIM III

## 11 U.S.C. 523(a)(6)

## (By Plaintiff Against Defendant Bronfeld)

47.    Plaintiff re-alleges and incorporates herein by reference each of the allegations contained in paragraphs 1 through 46 above as though fully set forth herein.

48.    This claim is brought under 11 U.S.C. § 523(a)(6).

49.    Defendant Matthew Robert Bronfeld engaged in deliberate and wrongful conduct intended to cause injury to Plaintiff and its property.  Acting as COO of NFM and in control of Sestina's financial accounts, Bronfeld intentionally diverted company funds, forged financial documents, and caused unauthorized loans to be issued in Sestina's name.  These acts were not accidental or negligent; they were deliberate and calculated steps designed to misappropriate Sestina's assets and conceal the resulting harm.

50.    Bronfeld's actions were willful within the meaning of § 523(a)(6) because he acted with the subjective intent to cause harm to Sestina or, at a minimum, with actual knowledge that injury to Sestina's property was substantially certain to result from his conduct.  Bronfeld knew that by diverting funds, falsifying loan documents, and concealing the company's true financial condition, Sestina would suffer significant financial loss and business collapse.

51.    Bronfeld's conduct was also malicious, as it was wrongful, intentional, necessarily caused injury, and was undertaken without just cause or excuse.  His actions served no legitimate business purpose.  By depleting Sestina's operating capital, concealing tax delinquencies, and saddling the company with unauthorized debt, Bronfeld knowingly destroyed Sestina's financial viability and reputation.

FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY

2:25-ap-01333-WB

52.    As a direct and proximate result of Bronfeld's willful and malicious conduct, Plaintiff suffered severe financial harm, including the loss of business operations, unpaid tax obligations exceeding $500,000, unauthorized loans of more than $250,000, and the diversion of company funds exceeding $150,000.  The total amount of damages sustained by Plaintiff is estimated to exceed $1,000,000, subject to proof at trial.

**WHEREFORE,** based on the foregoing causes of action, Plaintiff Sestina Culver City, LLC prays for judgment against Defendant Matthew Robert Bronfeld, as follows:

(1)    For a judgment declaring that the debt owed to Plaintiff arising from Defendant's use of materially false written statements respecting the financial condition of an insider is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B);

(2)    For a judgment declaring that the debt owed to Plaintiff arising from Defendant's embezzlement and/or larceny is nondischargeable pursuant to 11 U.S.C. § 523(a)(4);

(3)    For a judgment declaring that the debt owed to Plaintiff arising from Defendant's willful and malicious injury is nondischargeable pursuant to 11 U.S.C. § 523(a)(6);

(4)    For entry of a money judgment in favor of Plaintiff and against Defendant in an amount according to proof at trial;

(5)    For pre-judgment and post-judgment interest at the maximum rates permitted by law;

(6)    For reasonable attorneys' fees and costs to the extent authorized by contract, statute, or applicable law; and

(7)    For such other and further relief as the Court deems just and proper.

/ / / /

FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY

2:25-ap-01333-WB

Dated: November 13, 2025                     VIVOLI SACCUZZO, LLP


                                             By: /s/ Jason P. Saccuzzo
                                                JASON P. SACCUZZO
                                                Attorneys for Plaintiff,
                                                SESTINA CULVER CITY
                                                LLC

17

FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY

2:25-ap-01333-WB